## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-05542-DD |
| Forest Grove, LLC, | Chapter 11 |
| Debtor. | ORDER DENYING DISCLOSURE STATEMENT AND DISMISSING CASE |

This matter is before the Court on Forest Grove, LLC's ("Debtor") Disclosure Statement, Ameris Bank's ("Ameris") Objection to Disclosure Statement ("Objection"), and Ameris's Motion to Dismiss Debtor's Chapter 11 Case ("Motion"). Debtor filed its original Disclosure Statement and Plan on November 18, 2010, and Ameris filed its Objection on December 28, 2010. Ameris also filed its Motion on the same day. Debtor filed a Response to Ameris's Objection ("Response") on January 17, 2011. Two Addendums to Debtor's Disclosure Statement were also filed, one on February 7, 2011 ("First Addendum") and one on February 14, 2011 ("Second Addendum"). Debtor also filed an Objection to Ameris's Motion on February 7, 2011. Ameris filed a supplemental memorandum on February 11, 2011, detailing Ameris's continuing objections to Debtors' First Addendum. A hearing was held on Debtor's Disclosure Statement and Ameris's Motion on February 15, 2011. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor filed for chapter 11 protection on August 2, 2010. Debtor is a limited liability company formed in 2001 to acquire and develop real estate. The CLM Irrevocable Trust ("Trust") is the sole member of Debtor, and the trustee of the Trust is Nickey Maxey ("Maxey").

Over the course of several years, Debtor acquired and developed real estate until it owned over 360 acres. Debtor used a portion of this real property to build an equestrian training facility, at an approximate cost of $1.4 million. There is also a residence located on the real property, which Maxey currently uses as his primary residence rent-free, as compensation for managing the property. However, Debtor's Disclosure Statement indicates that Maxey will pay rent in the amount of $2,000 per month in the future. Debtor's January 2011 monthly operating report indicates that this rent was paid.

In 2008, Debtor and Maxey signed a promissory note in the amount of $1,650,000 with Nexity Bank. The note was subsequently assigned to Ameris in 2009. The note is secured by four parcels of land, two of which are owned by Debtor, one of which is owned by the Trust, and one of which is owned by Maxey. It appears that this bankruptcy was filed in response to a foreclosure action filed by Ameris on March 1, 2010. Debtor's bankruptcy was filed just prior to the date of the foreclosure sale. Ameris is the sole objecting creditor to Debtor's Disclosure Statement.[1]

Debtor also owes BankMeridian, N.A. on a note in the original amount of $240,000, secured by the same four parcels of land. In 2009, Maxey entered into a settlement agreement with First South Bank ("First South") as a result of money loaned to him by First South. The original amount of the settlement was $171,671.67, and Maxey executed a confession of judgment in the amount of $104,008.57, which was delivered to and held by First South. The First South debt is listed on Debtor's Schedule D as a judgment lien on all assets. The First South debt, along with the BankMeridian debt and Ameris debt, are Debtor's only secured debts. Debtor's Schedule F lists unsecured debt of only $4,893.02.

---

[1] In fact, at the Disclosure Statement hearing, a representative for BankMeridian, N.A., Debtor's second priority secured creditor, indicated that BankMeridian approved of Debtor's Disclosure Statement and proposed Plan.

At some point after the filing of Debtor's chapter 11 petition, Debtor, believing that it was acting in the ordinary course of business, cut and sold timber from the property. Debtor received $28,584.41 from the sale of this timber. After being notified by the US Trustee's office that such activity appeared not to be in the ordinary course of business, Debtor deposited the $28,584.41 into its debtor-in-possession account. Debtor subsequently used some of the funds to pay bills, but upon being notified once again that it had acted improperly, Maxey personally contributed funds to reimburse the amount spent. Debtor's Response and First Addendum indicate that Debtor intends to use these funds to pay administrative costs.

Debtor's Disclosure Statement indicates that Debtor's chapter 11 plan will be funded with revenue from rent collected from Maxey, subdivision and sale of small lots, a "small and exclusive hunting preserve," and harvest of timber located on the property, if necessary. Debtor proposes to convey several parcels of real property to Ameris in full satisfaction of its claim. While Debtor's Disclosure Statement and Addendums indicate that the conveyance of property to Ameris will be sufficient to satisfy its claim in full, the documents also provide that if Ameris's claim is not satisfied, monthly payments will be made to Ameris. The documents do not specify the amount of these payments. Debtor's Disclosure Statement indicates that once Ameris's claim is satisfied, rental income it receives from Maxey will be sufficient to make plan payments. Debtor's First Addendum indicates that Maxey's rent payments will be $2,000 per month. As of the date of the Disclosure Statement hearing, no written lease had been executed for Maxey's rental of the residence. The Disclosure Statement does not contain any information concerning Maxey's ability to pay rent or any other sums of money that may be required under Debtor's plan.

## **CONCLUSIONS OF LAW**

### I. Debtor's Disclosure Statement

Ameris's Objection asserts that Debtor's Disclosure Statement is deficient in a number of respects. Ameris's supplemental memorandum sets forth specific questions which Ameris asserts still remain unanswered following the filing of Debtor's First Addendum. Ameris's primary continuing objections to Debtor's Disclosure Statement and Addendums essentially are that adequate information is not provided regarding Debtor's financial condition and affairs, Maxey's income and contributions to Debtor, and Debtor's ability to fund its plan.

11 U.S.C. § 1125(b) requires that before a debtor can solicit acceptance of a plan, he must provide a disclosure statement approved by the court "as containing adequate information" to creditors. Section 1125(a)(1) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but . . . need not include such information about any other possible or proposed plan.

Section 1125(a)(1) also states that when considering whether to approve a disclosure statement as containing adequate information, the court must consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." Ameris's detailed objections to numerous specific aspects of Debtor's Disclosure Statement necessitates that the Court examine each of the specific aspects of Debtor's Disclosure Statement individually, in order to determine whether the Disclosure Statement presents adequate information pursuant to section 1125.

*A. Miscellaneous Disclosure Statement Provisions*

Ameris contends that numerous provisions of Debtor's Disclosure Statement do not contain adequate information.  Subsequent to the filing of Ameris's Objection, Debtor filed a Response, as well as its First Addendum.  These documents apparently cured many of Ameris's original objections, as Ameris did not again address several issues in its supplemental memorandum.  Because Ameris no longer objects to these miscellaneous provisions, the Court has not addressed them in this Order.  Those provisions to which Ameris has stated a continuing objection, as well as those provisions that cause the Court concern, are individually discussed below.

*B. Administrative Costs*

Ameris originally objected to the adequacy of information regarding Debtor's administrative costs and how they will be paid.  Debtor's Disclosure Statement states, "Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan . . . in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor."  Disclosure Statement, docket entry # 28.  Debtor's Response indicates that Debtor's only administrative costs are U.S. Trustee fees, real property taxes, and Debtor's counsel fees.  The Response further indicates that these costs will be paid from "sources including the $28,584.41 in funds representing the proceeds from the sale of timber . . . ." and if additional funds are necessary, they will be provided by either the Trust or Maxey personally.  Debtor's Response, docket entry # 46.  Debtor's First Addendum also proposes to harvest timber from parcels of real estate being retained by Debtor in order to generate income to pay these claims.  Debtor's Response and First Addendum provide a breakdown of Debtor's estimates of its administrative costs.  Ameris's supplemental memorandum sets forth no continuing objection.

It appears that Debtor has provided sufficient information regarding the amount of its administrative costs; however, Debtor has been less than forthcoming regarding the source of funds that will be used to satisfy these costs. Debtor has indicated this money will come from timber proceeds, both those already in Debtor's possession and those that may later be earned. However, Debtor has also indicated that in the event this amount is insufficient to satisfy its administrative costs, either the Trust or Maxey will personally satisfy the claims. Debtor does not provide any information regarding the Trust or Maxey's actual ability to fund these expenses. This issue will be discussed in more detail below; for purposes of this aspect of Debtor's Disclosure Statement, the Court finds that Debtor's failure to provide information pertaining to Maxey's and the Trust's financial situations leaves the Disclosure Statement deficient.

*C. Debtor's Future Income and Expenses*

Ameris complains that Debtor's Disclosure Statement does not provide any information regarding the amount or sources of Debtor's future income and expenses. Ameris asserts that based on the information set forth in the monthly operating reports, it appears that Debtor has no income and therefore Debtor's Plan is not feasible. This is one of Ameris's primary continuing objections and reasons for requesting dismissal of Debtor's case. Debtor responds that its only future expenses are payments on debts other than Ameris's and any expenses associated with the residence located on the property. Debtor further asserts that the residence expenses will be offset by rental income paid by Maxey in the amount of $2,000 per month, plus taxes, utilities, and insurance. Debtor's Disclosure Statement and First Addendum provide that Debtor's future income will come from Maxey's rental payments, possible rental of the guest house on the property, the management of a hunting preserve, possible subdivision and sale of small lots, and

possible harvesting of timber. Ameris continues to object in its supplemental memorandum, stating that Debtor has still failed to show it has any income.

Debtor's statement of potential sources of revenue is speculative, at best. The sources Debtor lists are possible opportunities for income, not proven sources of current or future income. Debtor states that it has the potential to engage in activities such as operating a hunting preserve and selling small lots, but at the present time, it has not actually done so. Further, no information is provided concerning the market for these endeavors or the income and expenses associated with them. Additionally, while it appears that Maxey has previously made contributions to Debtor, Maxey has not heretofore paid rent to Debtor and has executed no written lease, and there is no information supporting Maxey's ability to continue making contributions. Debtor's Disclosure Statement indicates that Maxey was, until very recently, living in the residence on the property rent-free as compensation for managing the property. Thus, Maxey does not even have a history of payment that can help Debtor prove Maxey's actual ability to pay rent at the rate of $2,000 per month.

Because the success of Debtor's chapter 11 case is clearly contingent on Maxey's personal contributions, in order to provide adequate information, Debtor must disclose information regarding Maxey's financial situation that shows his ability to make such contributions. *See In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) (holding that debtor company's president's declaration that his wife would contribute needed capital to the debtor was "sheer speculation and wishful thinking" in the "absence of any form of corroboration or contract from the alleged sources of the[ ] funds" and therefore could not satisfy feasibility requirement for plan confirmation); *In re Wiston XXIV, Ltd. P'ship*, 153 B.R. 322, 327–28 (Bankr. D. Kan. 1993) (holding that plan was not feasible in spite of general partner's promise to contribute $100,000

because the general partner showed no proof he could actually make the payment). Debtor has not provided financial information concerning Maxey's ability to make financial contributions in support of Debtor's plan. As a result, the Court is left with mere assertions by Debtor and Maxey that Maxey will personally contribute $2,000 per month in the form of rental income to the Debtor, along with additional contributions if necessary. This is insufficient to provide creditors with adequate information and assurance regarding Debtor's future income. While Debtor does not have to state with certainty the exact amount of its future income and expenses, in order to provide creditors with adequate information, more is necessary than what is provided here. *See In re Feretti*, 128 B.R. 16, 21 (Bankr. D.N.H. 1991) (finding statement by the debtor that income and expenses are impossible to predict, but that based on the debtor's experience, the plan is feasible, is insufficient to provide adequate information). Debtor's Disclosure Statement is deficient in that it does not contain adequate information regarding Debtor's future income and expenses.

Additionally, a court may deny approval of a disclosure statement, even if it is not by itself deficient, if a debtor's plan has no hope of being confirmed. *In re Bermuda Bay, LLC*, Nos. 09-32133 and 09-32130, 2009 WL 5218071, at *3 (Bankr. E.D. Va. Dec. 31, 2009) (quoting *In re Criimi Mae, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000)). In order for a debtor's plan to be confirmed, it must be feasible, meaning that it is reasonably likely to succeed. 11 U.S.C. § 1129(a)(11); *In re Travelstead*, 227 B.R. 638, 650–51 (D. Md. 1998). Without proof of Maxey's ability to pay Debtor $2,000 per month in rent plus additional, unspecified contributions, Debtor cannot propose a feasible plan, as it has no income of its own. As a result, regardless of the adequacy of the information contained in Debtor's Disclosure Statement,

approval of the Disclosure Statement should be denied due to Debtor's inability to confirm a plan.

   *D. Additional Objections*

Ameris's remaining objections appear to relate to general confusion regarding appraisal values, the timber cutting that occurred early in Debtor's case, and Debtor's retention of a certain portion of the real estate. As with many other aspects of Debtor's Disclosure Statement, Debtor has provided a significant amount of detailed information regarding all of these subjects. However, the information has been provided throughout numerous documents in bits and pieces, making it difficult to comprehend exactly what Debtor's Plan provides and exactly what treatment creditors can expect to receive.

Debtor's Disclosure Statement refers to an appraisal completed in May 2010 for BankMeridian on all four parcels as a whole. This appraisal stated that the value of the property was $2,798.65 per acre without improvements, and with improvements up to $4,897.64 per acre. Debtor used these values, plus a 30% risk factor, to calculate the total value of the property being conveyed to Ameris Bank as $1,708,316.19. Debtor's First Addendum provides information regarding a new, recent appraisal obtained by the Trust. This appraisal provides different valuations per acre for each parcel, and values the equestrian center, previously valued at $1,400,000, at $1,520,000. Debtor once again applied a 30% risk factor and calculated the value of the property being conveyed to Ameris at $2,035,500.

Ameris complains that providing these two different values is confusing and inconsistent. This is not necessarily the case. Debtor states in the Disclosure Statement and the First Addendum that the appraisals were obtained by two different parties at two different times. The appraisals have been made available to Ameris. Simply consulting these two documents

properly informs the reader of the basis for the different values. It appears that Debtor included the second appraisal in order to provide creditors with a more recent valuation of the property.

Ameris's supplemental memorandum expressed confusion regarding whether these appraisal values reflected the timber cutting that occurred post-petition. At the Disclosure Statement hearing, Debtor's counsel indicated that the most recent appraisal obtained by the Trust was obtained after the timber cutting occurred; however, this essential information is not provided in the Disclosure Statement or Addendums. A statement at a hearing by counsel which provides information to supplement a disclosure statement cannot cure that disclosure statement's failure to provide adequate information. Additionally, it remains unclear from Debtor's numerous filings which parcels Debtor cut timber from. In response to Ameris's continuing objection on this point, Debtor's counsel stated at the Disclosure Statement hearing that the timber that was sold post-petition was cut from Parcel IV, the tract being retained by Debtor. Debtor's counsel also reiterated that the appraisal obtained by the Trust was obtained after the timber cutting was completed. Debtor's counsel conceded that this information is not contained in the Disclosure Statement or Addendums and did not appear completely certain which tracts timber was cut from. Regardless of the statements made at the hearing, it remains unclear to the Court, and apparently creditors, what timber was removed and how it affected the parcel's valuation, if at all, especially in light of the fact that the information presented by Debtor's counsel at the hearing is not contained in any of the documents filed by Debtor.

Ameris also expressed confusion regarding which parcels are being retained by Debtor and which are being conveyed to Ameris to satisfy its claim. Debtor's Disclosure Statement indicates that Ameris will be receiving at least a portion of the parcels described as Parcel I, II, and III in full satisfaction of its claim. Ameris will receive 22 acres of Parcel III, currently owned

by Debtor, on which the equestrian facility is located. Ameris will also be receiving all of Parcels I and II, which are titled in Maxey's and the Trust's names, respectively. Debtor will retain Parcel IV and the remainder of Parcel III. While this information regarding the property being conveyed to Ameris is contained in the Disclosure Statement, Ameris's confusion is warranted, as it is not clear exactly which 22 acres from Parcel III Ameris will receive.

Ameris presented additional miscellaneous continuing objections in its supplemental memorandum that it is unnecessary to address here.[2] The Court finds that Debtor's Disclosure Statement and Addendums are deficient in a number of respects relating to the property valuations and the funding of Debtor's plan. Debtor's continued failure to provide any information regarding the financial situation of Maxey and the Trust and their ability to make continued contributions to Debtor is fatal. Additionally, with respect to many aspects of the Disclosure Statement, even where information is adequate, it is provided in a piecemeal fashion that makes it difficult to understand Debtor's financial condition and prospects. The purpose of a disclosure statement is to clearly provide creditors with information regarding the debtor's plan and their treatment under that plan. Creditors should not be required to go on a treasure hunt throughout multiple filings in order to ascertain that information. Based on these considerations, the Court finds that Debtor's Disclosure Statement does not contain adequate information and cannot be approved.

**II. Ameris's Motion to Dismiss**

Ameris argues that Debtor's case should be dismissed based on the deficiencies in Debtor's Disclosure Statement, pursuant to section 1112(b) and 1112(b)(4)(C), and because "there is no 'reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time.'"

---

[2] These issues included interest rate calculations, lack of information about real property taxes, potential claims by Debtor against Maxey, the Trust, or another insider entity, and lack of sufficient information about Maxey's lease of the residence on the property.

Ameris's Motion to Dismiss, docket entry #42. Debtor argues that its plan is or will soon be confirmable based on addendums filed by Debtor.

> Section 1112(b) states:
>
> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Section 1112(b)(4) provides a non-exhaustive list of situations which constitute "cause" for purposes of this section. Ameris first alleges that "cause" is present in Debtor's case because Debtor has "fail[ed] to maintain appropriate insurance [posing] a risk to the estate or to the public." 11 U.S.C. § 1112(b)(4)(C).

Ameris's Objection states that Debtor's Disclosure Statement does not provide any information regarding insurance on the property. Debtor's Response indicates that insurance coverage is maintained on the entire property, the cost of which is $7,532.00 per year. Additionally, Debtor's First Addendum states that the annual cost of insurance for the parcel where the equestrian center is located would be $7,500 and that Debtor has increased insurance coverage to $1,000,000. The First Addendum states that the cost of the increased coverage has not yet been determined, but will clearly increase above the original figure of $7,532.00 per year. Ameris's supplemental memorandum continues to advocate for dismissal of Debtor's case based on failure to maintain insurance, because Ameris alleges that insurance in the amount of $1,000,000 is not adequate based on the much higher replacement cost of the equestrian center. At the February 15 hearing on Debtor's Disclosure Statement, Debtor's counsel responded to Ameris's continuing objections, arguing that the difference between any appraisal values of the property and amount of insurance was both "justifiable and curable." Debtor's counsel

additionally stated that Debtor would be willing to increase insurance coverage to the extent necessary to satisfy Ameris's objection.

Section 1112(b)(4)(C) states that cause for dismissal is established if a debtor fails to maintain sufficient insurance on his property at the risk or potential detriment of the estate or creditors. In Debtor's case, Ameris has not established cause under section 1112(b)(4)(C). Debtor is currently maintaining insurance in the approximate amount of the value of the equestrian center and offered to obtain additional coverage if necessary. Debtor has not failed to maintain insurance to the extent that it is creating a risk to its estate or creditors. Ameris has not established cause for dismissal under section 1112(b)(4)(C).

However, Ameris also alleges that Debtor's Disclosure Statement should be dismissed due to Debtor's lack of income and inability to confirm a plan within a reasonable time. On this basis, dismissal is warranted. Section 1112(b)(4)(A) provides that cause exists for dismissal if there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Section 1112 provides a debtor with certain opportunities to avoid dismissal, if it can show unusual circumstances, or if it can meet the test of section 1112(b)(2).[3] The Court finds that cause exists for dismissal, and Debtor has failed to meet its burden of showing its case should not be dismissed. Debtor's previous monthly operating reports show Debtor has no income, and Debtor's most recent monthly operating report, filed after the date of the hearing on the Disclosure Statement, shows only $2,000 of income, which is the amount of rent Maxey has agreed to pay Debtor. As stated above, no

---

[3] Section 1112(b)(2) provides that a debtor's case should not be dismissed if "the debtor or another party in interest objects and establishes that – (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) – (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."

evidence has been provided regarding Maxey's financial circumstances and ability to pay rent and other expenses. Debtor's ability to earn income from other sources in the future is speculative and is not adequately discussed in the Disclosure Statement. Without income or a capital infusion, Debtor's plan cannot be confirmed. Therefore, cause exists to dismiss Debtor's chapter 11 case.

## CONCLUSION

Debtor's Disclosure Statement does not contain adequate information sufficient to inform creditors of their rights and treatment under Debtor's plan. As a result, approval of Debtor's Disclosure Statement is denied. Because Debtor has no proven income and no ability to confirm a chapter 11 plan, cause for dismissal exists. Debtor's chapter 11 case is dismissed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/03/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 03/03/2011